# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

EMMANUEL L. MUWONGE
and FLORENCE MUWONGE,

      Plaintiffs,

    v.                            Case No. 07-C-0733

ALVIN EISENBERG,
EISENBERG RILEY & MUWONGE SC,
and EISENBERG & RILEY SC,

      Defendants.

---

## DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS

---

## I. BACKGROUND

This action was originally filed by the plaintiffs, Emmanuel Muwonge ("Emmanuel" or "Muwonge") and Florence Muwonge ("Florence" or "Mrs. Muwonge"), in the Milwaukee County Circuit Court on May 2, 2007. The complaint alleged: (1) violation of Wisconsin fair employment laws; (2) violation of the Americans with Disabilities Act ("ADA"); (3) intentional infliction of emotional distress; (4) fraud, breach of contract, and fraudulent inducement; and (5) violation of the right to privacy. On August 14, 2007, the defendants, Alvin Eisenberg ("Eisenberg"), Eisenberg Riley & Muwonge, SC, and Eisenberg & Riley SC ("the defendants"), removed the action to the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1441. On December 17, 2007, the plaintiffs filed an amended complaint. The amended complaint includes a sixth cause of action for retaliation.

On January 7, 2008, the defendants filed a motion to dismiss the plaintiffs' complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that the plaintiffs' complaint, at least in part, fails to state a claim upon which relief can be granted. More precisely, the defendants have moved to dismiss all of Florence's claims (and thereby dismiss Mrs. Muwonge as a party), to dismiss Eisenberg as a party, and to dismiss Emmanuel's claims for intentional infliction of emotional distress, fraud, breach of partnership agreement, violation of the right to privacy, and retaliation. The defendants' motion to dismiss has been fully briefed and is ready for resolution. For the reasons which follow, the defendants' motion will be granted in part and denied in part.

## II. DISCUSSION

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to decide whether the plaintiff's pleadings actually state a claim upon which relief can be granted. For the purposes of a motion to dismiss, all factual allegations of the complaint are taken as true. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Eison v. McCoy*, 146 F.3d 468, 470 (7th Cir. 1998). Such allegations must be viewed liberally and in the light most favorable to the plaintiff. *See Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). A complaint must contain enough "[f]actual allegations . . . to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). However, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find

2

evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S. Ct. at 1969 n.8. However, the court is not required to "ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988).

## A. Mrs. Muwonge's Claims

The defendants argue that the plaintiffs fail to state any claims under which Mrs. Muwonge can recover. Specifically, the defendants argue that: (1) Florence cannot state a claim for violation of Wisconsin fair employment laws, the ADA, or retaliation because she was never an employee of any of the defendants; (2) Florence cannot state a claim for breach of contract because there is no allegation that she had a contract with the defendants; (3) Florence cannot state a claim for fraud because she was not promised anything during the negotiations between the defendants and Muwonge; (4) Florence cannot state a claim for intentional infliction of emotional distress because there is no allegation she had any contact with any of the defendants, and the complaint only describes the severe physical and emotional distress of Emmanuel Muwonge; and (5) Florence cannot state a claim for a violation of privacy because the personal items at issue were allegedly Emmanuel Muwonge's.

In response, the plaintiffs argue that Florence, as Muwonge's spouse, can maintain a claim against the defendants for loss of consortium. The plaintiffs argue that a loss of consortium claim is derivative in nature and depends upon the validity of the injured spouse's claims. (Pl.'s Resp. Br. at 4; citing *McCreary v. Libbey-Owens-Ford, Co.*, 132 F.3d 1159, 1167 (7th Cir. 1997)). As such, according to the plaintiffs, Florence can maintain a claim for loss of consortium because Emmanuel's claims are valid.

3

A claim for loss of consortium involves the loss of "the love and affection, the companionship and society, the privileges of sexual relations, the comfort, aid, advice and solace, the rendering of material services, the right of support and any other elements that normally arise in a close, intimate, and harmonious marriage relationship." WIS JI-CIVIL 1815; *see also Kottka v. PPG Industries, Inc.*, 130 Wis. 2d 499, 520, 388 N.W.2d 160, 169 (Wis. 1986). In order to recover damages, the plaintiff must prove "[a] wrongful invasion, impairment, or deprivation of any of these rights, resulting from a disabling injury to a spouse." *Id*. "[T]he elements of loss of society, affection and sexual companionship in a spouse's action for loss of consortium are personal to the claiming spouse and apart from the claim of the injured spouse." *Kottka*, 130 Wis. 2d at 521, 388 N.W.2d at 170. "The claim for a loss of consortium is derivative, in the sense that it does not arise unless the other spouse has sustained a personal injury." *Id*. "However, the claim is not for the other spouse's personal injury but for the separate and independent loss which the noninjured spouse sustains." *Id*.

Such being the case, although it is true that a claim for loss of consortium is derivative, Florence Muwonge must still allege, separately and independently, that she personally suffered a loss of consortium. Florence Muwonge has failed to do so in the amended complaint.

To begin with, loss of consortium is not listed as a claim, or cause of action, in the complaint. As noted above, a statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson,* 127 S. Ct. at 2200. The failure to allege a separate claim for loss of consortium compels the conclusion that the defendants were not given fair notice of the existence of such claim.

Moreover, the complaint does not specifically allege any of the elements of loss of consortium. As to the allegations relating to a violation of Wisconsin Fair Employment laws, as well

4

as fraud and breach of contract, the complaint only describes damages suffered by Emmanuel Muwonge. In regard to the allegations supporting the claim for violation of privacy, the complaint merely states that the defendants' actions "caused the plaintiffs to sustain damages as a result of said violations by defendants." (Am. Compl. ¶ 36.) Similarly, as to the allegations supporting the claim for retaliation, the complaint states that the "said retaliation by each of the defendants was the proximate cause of damages that each of the plaintiffs herein sustained and continues to sustain." (Am. Compl. ¶ 43.) These vague allegations fail to identify the elements of loss of consortium and fail to provide the defendants fair notice of the existence of a claim for loss of consortium.

The allegations of damages, as they relate to Florence, are somewhat more specific in relation to the plaintiffs' claim under the ADA. There, the plaintiffs state "[t]hat as a direct and proximate result of Defendants' respective violations of the ADA, Emmanuel Muwonge and Florence Muwonge have each[] suffered damages, including but not limited to loss of past and present income, mental anxiety and emotional distress." (Am. Compl. ¶ 24.) Similarly, in relation to the plaintiffs' claim for intentional infliction of emotional distress, the plaintiffs state "[t]hat as a direct and proximate result of such Intentional Infliction of Emotional Distress, each plaintiff, Florence and Muwonge has suffered damages, and each continues to suffer damages including but not limited to loss of past and future income[,] mental anxiety and emotional distress." (Am. Compl. ¶ 28.)

Although these allegations contain more specificity, they nevertheless still fail to adequately state a claim for loss of consortium. As noted above, under the Wisconsin jury instructions, a plaintiff must prove "[a] wrongful invasion, impairment, or deprivation of any of these rights, *resulting from a disabling injury to a spouse*." WIS JI-CIVIL 1815 (emphasis added). Here, the complaint does not allege that Florence's damages are the result of her husband's disabling injury,

5

but rather only alleges that her damages are the result of the actions of the defendants. Florence Muwonge also does not allege damages that are indicative of a loss separate and independent from her husband's damages, or that indicate that her damages involve the loss of consortium. Florence Muwonge's damages are described identically to her husband's damages. As noted above, a claim for damages due to loss of consortium is separate and independent from the other spouse's personal injury. The complaint does not make clear how Florence Muwonge's damages are separate from her husband's damages.

Moreover, Florence only alleges that she suffered loss of income, mental anxiety, and emotional distress, which are not elements of a claim for loss of consortium. She does not allege that her damages involved the loss of "love and affection, the companionship and society, the privileges of sexual relations, the comfort, aid, advice and solace, the rendering of material services, the right of support and any other elements that normally arise in a close, intimate, and harmonious marriage relationship." WIS JI-CIVIL 1815. It would be speculative to infer that Florence Muwonge suffered types of damages other than those specifically listed in the complaint.

Simply stated, the plaintiffs' complaint fails to provide the defendants with fair notice of a claim by Florence Muwonge for loss of consortium, and fails to identify the grounds upon which this claim rests. The factual allegations, when viewed liberally and in the light most favorable to the plaintiffs, fail to state a claim that Florence Muwonge suffered a loss of consortium as a result of Emmanuel Muwonge's injury. Such being the case, Florence Muwonge will be dismissed as a party to this action.[1]

---

[1] Given that Florence Muwonge has been dismissed as a party, the remainder of this decision will treat Emmanuel Muwonge as the sole plaintiff.

**B. Intentional Infliction of Emotional Distress (Count Three)**

In order to maintain a claim for intentional infliction of emotional distress in Wisconsin, a plaintiff must establish: (1) the defendants acted intentionally to cause emotional distress; (2) the defendants' conduct was extreme and outrageous; (3) the defendants' conduct was a cause-in-fact of the emotional distress; and (4) the plaintiff suffered an extreme disabling emotional response to the defendants' conduct. *Rabideau v. City of Racine*, 243 Wis. 2d 486, 501, 627 N.W.2d 795, 803 (Wis. 2001) (citing *Alsteen v. Gehl*, 21 Wis. 2d 349, 359, 124 N.W.2d 312 (Wis. 1963)).

The defendants argue that the plaintiff has failed to plead facts sufficient to establish two of these four elements. Specifically, the defendants argue that the plaintiff has not pled facts sufficient to show that the defendants acted intentionally, or to show that the defendants' actions were extreme and outrageous.

In response, the plaintiff contends that the amended complaint provides more than sufficient facts to establish a claim for intentional infliction of emotional distress. In support of this contention, the plaintiff cites to the following facts alleged in the complaint: the defendants were aware that Muwonge had been diagnosed with Sickle-Cell disease when they agreed to allow him to work from home on an as needed basis; in violation of this agreement, the defendants began to arbitrarily withhold payroll and bonus money when he worked from home; the defendants arbitrarily retracted his partner benefits and privileges and changed the firm name from Eisenberg, Riley & Muwonge, S.C., to Eisenberg & Riley, S.C., without any notice or explanation; the defendants breached Muwonge's right to privacy by entering his private office, removing personal items from his office, and opening his personal mail; and the defendants retaliated against Muwonge by terminating his employment after he exercised his legal rights in this case. (Pl.'s Br. at 6-7.)

7

In order to establish the element of intent, the "plaintiff must establish that the purpose of the conduct was to cause emotional distress." *Rabideau*, 243 Wis. 2d at 502, 627 N.W.2d at 803. "[I]ntent may be evidenced by inferences from words, conduct or the circumstances in which events occurred." *Id*. However, "[t]here must be something more than a showing that the defendant intentionally engaged in the conduct that gave rise to emotional distress in the plaintiff; the plaintiff must show that the conduct was engaged in for the purpose of causing emotional distress." *Id*.

The defendants argue that merely acting unfairly does not demonstrate the necessary intent to inflict emotional distress required to state a claim for intentional infliction of emotional distress. (Def.'s Br. at 4; citing *Evrad v. Jacobson*, 117 Wis. 2d 69, 73, 342 N.W.2d 788 (Wis. Ct. App. 1983) (merely acting unfairly cannot constitute outrageous conduct intentioned to cause emotional distress)). Rather, according to the defendants, in order to infer intent, the conduct must include, at the very least, threatening conduct, abusive behavior, or bullying. (Def.'s Reply Br. at 4; citing *Id*.)

Although it may be true that allegations which only demonstrate unfair conduct would be insufficient to allow for an inference of intent, this does not mean that the plaintiff has failed to sufficiently allege intent in the complaint. For purposes of a motion to dismiss, in order to sufficiently allege the element of intent for intentional infliction of emotional distress, the plaintiff must merely allege that the purpose of the defendants' conduct was to cause emotional distress. The plaintiff has done so. In the complaint, the plaintiff alleges that the "[d]efendants' conduct as set forth and described in this Complaint constitutes extreme and outrageous conduct which intentionally

8

and/or recklessly caused and continues to cause Muwonge [] severe physical and emotional distress."[2] (Am. Compl. ¶ 26.)

Whether the plaintiff has sufficient evidence to establish the element of intent through inference is an issue better left for summary judgment or trial. Indeed, at this stage of the proceedings, it is unclear whether the plaintiff will even need to establish intent through inference. As these proceedings unfold, it may come to pass that the plaintiff will be able to develop direct evidence of intent such that it will be unnecessary to infer intent.

The defendants also argue that the plaintiff's allegations are insufficient to establish extreme and outrageous conduct. "In order for conduct to reach the standard of being extreme and outrageous, that conduct must be such that an average member of the community would find it to be a complete denial of the individual's dignity as a person." *Gianoli v. Pfleiderer*, 209 Wis. 2d 509, 523-24, 563 N.W.2d 562, 567 (Wis. Ct. App. 1998) (citing *Alsteen*, 21 Wis. 2d at 359-60, 124 N.W.2d at 318). "Mere carelessness or bad manners is insufficient." *Id.*; *see also Evrad*, 117 Wis. at 73, 342 N.W.2d at 788.

The defendants contend that, while the plaintiff's allegations may indicate that the defendants' conduct was unfair, such allegations do not establish that their conduct was extreme and outrageous. According to the defendants, the allegations do not indicate that the defendants engaged in any abusive or threatening behavior. The defendants argue that the allegations only indicate that there was a breach of contract, which would demonstrate, at most, that their conduct was unfair or distasteful.

---

[2]Although this statement may not clearly state that the purpose of the conduct was to cause emotional distress, that appears to essentially be the meaning of this statement.

9

To be sure, an allegation of breach of contract does not, in and of itself, state a claim for extreme and outrageous behavior. However, this does not mean that any conduct which constitutes a breach of contract cannot also rise to the level of being extreme and outrageous. Rather, whether conduct is extreme and outrageous depends on the particular circumstances of each case. Here, included among the plaintiff's allegations are: (1) subsequent to Muwonge's starting his employment, defendant Eisenberg "engaged in a calculated pattern of conduct intended to harass Emmanuel Muwonge while at the same time causing him to incur substantial losses as a result of said conduct;" (2) "Eisenberg, for malicious reasons has continued to engage in a pattern of conduct intended to harass Emmanuel Muwonge by arbitrarily holding payroll and bonus money due to Muwonge;" (3) the defendants removed personal property from Muwonge's office and opened sealed personal mail, causing the plaintiffs to sustain damages; and (4) the defendants "set out on a pattern of conduct to retaliate against [] Muwonge by instituting measures, policies and procedures they each knew were in violation of the law and which they calculated to oppress and did oppress the plaintiff." (Am. Compl. ¶¶ 7, 9, 35, 36, 41.)

The plaintiff's complaint does not allege a mere breach of contract. Rather, the complaint contains allegations of calculated harassment starting from the time of Muwonge's employment and continuing until his eventual termination. Given the factual nature of a claim for intentional infliction of emotional distress, and without a full sense of the facts involved in this case, it would not be appropriate at this stage of the proceedings to decide whether the defendants' conduct could be considered extreme and outrageous. Such being the case, the defendants' motion to dismiss the claim for intentional infliction of emotional distress will be denied.

**C. Fraud (Count Four)**

In Wisconsin, the elements required to establish fraud are "a false representation made with intent to defraud and reliance by the injured party on the misrepresentation." *Batt v. Sweeney*, 254 Wis. 2d 721, 730, 647 N.W.2d 868, 872 (Wis. Ct. App. 2002). Fed. R. Civ. Pro. 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This heightened pleading standard requires more than the plain statement of the claim required under Rule 8. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). Rather, Rule 9(b) requires that facts such as "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff" be alleged in detail. *Id.* (quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). Stated another way, a complaint which alleges fraud must state the "the who, what, when, where, and how." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

The heightened pleading standard is warranted because public fraud charges can greatly harm the reputation of a business or individual, because fraud is frequently charged irresponsibly by those who have suffered a loss and desire to find someone to blame, and because charges of fraud "frequently ask courts in effect to rewrite the parties' contract or otherwise disrupt established relationships." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). By requiring greater specificity, "the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Id.*

11

The defendants argue that the plaintiff has failed to plead his claim for fraud with sufficient particularity because the complaint only provides the "who," but fails to allege the "what, when, where, and how" of the fraud. Specifically, the defendants contend that the complaint fails to allege exactly what promises were made to Muwonge, when they were made, and how the defendants defrauded him.

In his complaint, the plaintiff alleges that:

30.     The Plaintiff, Emmanuel Muwonge and the Defendant, Eisenberg had an agreement wherein Eisenberg agreed to change the then firm name to Eisenberg, Riley & Muwonge, SC, as a result of which Muwonge would become partner in the firm with certain privileges, benefits and financial rewards; that said Muwonge, relied upon certain promises and conditions agreed upon between Eisenberg and Muwonge pursuant to which promises and conditions . . .

31.     That the defendant, Eisenberg individually and as an officer of defendant corporation engaged in conduct that amounts to fraud, arbitrarily retracted the benefits and privileges agreed upon with Muwonge, arbitrarily changed the firm name from Eisenberg, Riley & Muwonge, SC to Eisenberg & Riley, SC in violation and breach of the agreement between Eisenberg and Muwonge and a breach of the fiduciary duties Eisenberg owed and owes to Muwonge.

(Am. Compl. ¶¶ 30-31.)

The plaintiff has not pled his claim for fraud with sufficient particularity. Although the complaint identifies Eisenberg as the individual who made the alleged misrepresentation, it does not state the time, place, method, or specific content of the alleged misrepresentation. The complaint only indicates that there was an agreement sometime prior to Muwonge's beginning his employment, that this agreement provided that the firm name would be changed to include Muwonge's name and Muwonge was to become a partner with "certain privileges, benefits and financial awards," and that the defendants subsequently arbitrarily breached this agreement. The complaint does not specifically identify the "privileges, benefits and financial awards," or how exactly these terms were

12

misrepresented by Eisenberg. Moreover, the complaint does not allege that Eisenberg, at the time of the agreement, intentionally misrepresented the terms of the agreement in order to defraud Muwonge.

Absent such details, the complaint merely states a claim for breach of contract. Simply providing vague allegations which outline the elements of a breach of contract claim is insufficient to meet the heightened pleading standards of Rule 9(b). *See, e.g., PAI Corp. v. Integrated Sci. Solutions, Inc.*, 2006 WL 1390564, *6 (N.D. Cal. 2006) (a mere allegation of breach of contract is not sufficient evidence that a defendant never intended to honor a contract for purposes of fraud, and "to permit such use contradicts the heightened pleading requirements of Rule 9(b) and would allow every breach of contract [to] support a claim for fraud so long as the plaintiff adds to his complaint that the defendant never intended to keep her promise." (quotations omitted)); *ABC-NACO, INC. v. DeRUYTER*, 1999 WL 521171, *2 (N.D. Ill. 1999) (claims which do not involve fraud, including breach of contract, fall outside the requirements of Rule 9(b)).

Simply stated, the plaintiff has failed to provide sufficient details regarding the alleged false representation, and has failed to even generally allege that the defendants made the false representation with the intent to defraud. Such being the case, Count Four of the complaint, insofar as it purports to set forth claims of fraud and fraudulent inducement, will be dismissed.

**D. Breach of a Partnership Agreement (Count Four)**

The defendants argue that the plaintiff fails to state a claim for breach of a partnership agreement because the plaintiff fails to establish in the complaint that a partnership agreement existed. The defendants contend that, without a partnership agreement, Eisenberg cannot be held

13

personally liable for breach of contract because he was acting as a director or officer of a corporation. As a result, according to the defendants, Eisenberg should be dismissed from the case.[3]

The first question to address, therefore, is whether the plaintiff has adequately alleged in the complaint that there was a partnership agreement. Under Wis. Stat. § 178.03, a partnership is defined as "an association of 2 or more persons to carry on as a co-owners [of] a business for profit." The Wisconsin Supreme Court has outlined four elements required to create a partnership: (1) the parties must intend to form a *bona fide* partnership, and accept the legal duties and requirements required of such a relationship; (2) a community of interest must exist in the capital employed by the partnership; (3) each partner must equally manage the partnership; and (4) the profits and losses must be equally shared between the partners. *Heck & Paetow Claim Service, Inc. v. Heck*, 93 Wis. 2d 349, 359-60, 286 N.W.2d 831, 836 (Wis. 1980). "The ultimate and controlling test as to the existence of a partnership is the parties' intention of carrying on a definite business as co-owners. *Id*. at 360, 286 N.W.2d at 836. "Such intention may be determined from the terms of the parties' agreement or from their conduct under the circumstances of the case." *Id*.

The defendants argue that Muwonge cannot be a partner because he alleges that he is owed payroll and bonus money, and because he alleges that he was an employee for purposes of his ADA claim. According to the defendants, a partner is not allowed to receive wages for his work in the partnership, and cannot be both an employee and partner. In support of the their first contention, i.e., that a person who receives wages is not a partner, the defendants cite the Wisconsin statute governing partnerships. Under Wis. Stat. § 178.15:

---

[3]The defendants raise their argument that Eisenberg should be dismissed as a party only in connection with their discussion of the claim for breach of contract.

14

The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

. . .

(6) No partner is entitled to remuneration for acting in the partnership business, except that a surviving partner is entitled to reasonable compensation for his or her services in winding up the partnership affairs.

To be sure, Muwonge alleges in his complaint that he was owed payroll and bonus money, which would indicate that he was receiving remuneration for his work in the business. However, the duties listed under § 178.15 are *subject to any agreement* between Muwonge and Eisenberg. Muwonge's complaint alleges that, pursuant to their agreement, Muwonge would be made a partner with certain benefits and privileges, including the receipt of payroll and bonus money. Wis. Stat. § 178.15 does not preclude the forming of agreements which alter the general rules enumerated in the statute.

In support of their second contention, i.e., that Muwonge could not have been a partner because he has alleged that he was an employee for purposes of his ADA claim, the defendants cite *Heck* and *Clackamas Gastroenterology Assocs., P.C. v. Well*s, 538 U.S. 440 (2003). In *Heck*, the Wisconsin Supreme Court outlined the elements required for forming a partnership, and concluded that the plaintiff had failed to prove that there was a partnership relationship rather than a corporate relationship between two shareholders. 93 Wis. 2d at 360, 286 N.W.2d at 836. Although the court did not specifically address the issue of whether an employee could also be considered a partner, the court did note that "there cannot be two business relationships, i.e., one corporate and the other a personal one, between identical parties at the same time, with regard to one business venture and involving the same subject matter *without agreement of any kind*." *Heck*, 93 Wis. 2d at 358, 286

15

N.W.2d at 835 (emphasis in original). However, Muwonge alleges that there was a negotiated partnership agreement. As noted above, there is no rule precluding an agreement which allows a partner to also retain some of the characteristics of an employee.

Moreover, under the ADA's definition of "employee," it is possible for a partner to be considered an employee for purposes of the ADA. Indeed, the Supreme Court's opinion in *Well*s indicates that, contrary to the defendants' arguments, a partner can qualify as an employee for purposes of the ADA. In *Wells*, the Supreme Court noted that:

> The question [of] whether a shareholder-director is an employee . . . cannot be answered by asking whether the shareholder-director appears to be the functional equivalent of a partner. . . . there are partnerships that include hundreds of members, some of whom may well qualify as "employees" because control is concentrated in a small number of managing partners. . . . Thus, asking whether shareholder-directors are partners -- rather than asking whether they are employees -- simply begs the question.

538 U.S. at 446.

Simply stated, Muwonge's allegation that he is an employee for purposes of his ADA claim does not preclude him from also claiming that he had a valid partnership agreement with Eisenberg. The definition of "employee" under the ADA is sufficiently broad such that it does not preclude the possibility that a partner could be considered an employee under the ADA. *See id.* at 625 n.6 ("a broad reading of the term 'employee' would -- consistent with the statutory purpose of ridding the Nation of discrimination -- tend to expand the coverage of the ADA by enlarging the number of employees entitled to protection.").

The defendants also argue that Muwonge has failed to allege that he shared in the profits and losses of the partnership. Although this may be correct, Muwonge is not required to plead in his complaint all of the elements required to establish a partnership. The complaint sufficiently alleges

16

that Muwonge was a partner pursuant to a contract, such that the defendants have been given fair notice of the claim for breach of contract.[4]

Given that the plaintiff has adequately alleged that there was a partnership agreement between Muwonge and Eisenberg, it is not necessary to address the defendants' argument that Eisenberg cannot be held personally liable because he was acting as a director or officer of the corporation. Muwonge has sufficiently stated a claim for breach of contract against Eisenberg. Thus, the defendants' motion to dismiss the claim for breach of contract and to dismiss Eisenberg as a defendant will be denied.

**E. Right to Privacy (Count Five)**

In Wisconsin, the right to privacy is protected by statute. Under Wis. Stat. § 995.50, "invasion of privacy" is defined, in pertinent part, as "[i]ntrusion upon the privacy of another of a nature highly offensive to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass."[5] An individual is entitled to equitable relief, compensatory damages, and attorney's fees when his privacy is "unreasonably invaded." Wis. Stat. § 995.50.

In his complaint, Muwonge alleges that the defendants infringed on his privacy rights by engaging in conduct which included, but was not limited to, "the removal of personal property and

---

[4]It is also noteworthy that Muwonge has alleged that the defendants did, for a period of time, change the name of the firm to include Muwonge's name. This allegation would seem to provide support for Muwonge's claim that there was a partnership agreement.

[5]The statute also includes in the definition of "invasion of privacy" a party's use of a person's name or picture for business purposes without obtaining consent, and a party's communication of a person's private information to the public. Wis. Stat. § 995.50(2)(b)-(c).

17

items from Muwonge's office, the opening of sealed correspondence otherwise personal and which the defendants knew were personal."  (Am. Compl. ¶ 35.)

The defendants argue that, because the statute defines "invasion of privacy" as the intrusion upon the privacy of another in a *place*, the opening of mail cannot constitute invasion of privacy because a person's mail is not a place.  Moreover, the defendants contend that an employee could not reasonably expect privacy in mail received at his or her office.

> This is especially true for attorneys when they are out of the office for any extended length of time.  Most of the mail addressed to an attorney is time-sensitive and subject to deadlines associated with harsh penalties.  Therefore, an attorney cannot reasonably expect that his or her mail will not be opened to ensure that the correspondence is not time-sensitive.  The opening of an employee's mail is similar to a situation where an employer monitors an employee's e-mail account or internet usage.  The employee cannot reasonably expect privacy in either instance, nor is the intrusion one that is highly offensive to a reasonable person.

(Defs' Br. at 7.)

Finally, the defendants argue that the removal of personal property from Muwonge's office presumably took place when he was terminated, and that an employee has no reasonable expectation of privacy in his office once he is terminated.  (Defs' Br. at 6-7.)

As an initial matter, both parties agree that the word "place" in the Wisconsin statute's definition of invasion of privacy refers to a geographical place.  *See Hillman v. Columbia County*, 164 Wis. 2d 376, 392, 474 N.W.2d 913, 919 (Ct. App. 1991) (holding that the plain meaning of "place" in Wisconsin's invasion of privacy statute is geographical, and thus does not include a file of medical records).  Such being the case, the mere opening of personal mail cannot constitute an invasion of privacy under Wis. Stat. § 995.50.

18

However, Muwonge has not simply alleged that the defendants invaded his privacy by reading his personal mail.  Rather, the plaintiff alleges that the defendants invaded Muwonge's privacy by entering his office, opening his private mail, and removing his personal items.  Therefore, at issue is whether, under the facts alleged, Muwonge could have had a reasonable expectation of privacy in his office.  Viewing the allegations liberally and in the light most favorable to the plaintiff, I conclude that Muwonge has adequately stated a claim for invasion of privacy.

The defendants cite *O'Connor v. Ortega* to support their argument that an employee cannot have a reasonable expectation of privacy in their offices from supervisors or other employees.  480 U.S. 709 (1987).[6]  However, the defendants' interpretation of *O'Connor* is overbroad.  In *O'Connor*, the Supreme Court did not hold that employees could never have a reasonable expectation of privacy in their offices from supervisors or other employees.  Rather, the court stated:

> The operational realities of the workplace, however, may make some employees' expectations of privacy unreasonable when an intrusion is by a supervisor rather than a law enforcement official.  Public employees' expectations of privacy in their offices, desks, and file cabinets, like similar expectations of employees in the private sector, may be reduced by virtue of actual office practices and procedures, or by legitimate regulation. . . . The employee's expectation of privacy must be assessed in the context of the employment relation. . . . some government offices may be so open to fellow employees or the public that no expectation of privacy is reasonable. . . . Given the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis.

*O'Connor*, 480 U.S. at 723.

_____

[6]*O'Connor* involved the right to privacy under the Fourth Amendment.  Although the case at hand involves the right to privacy under a Wisconsin statute and in a private setting, the Supreme Court's interpretation of what constitutes a "reasonable expectation of privacy" in the public sector is nonetheless informative.

Here, the employment relationship between Muwonge and the defendants is unclear. The practices and procedures of the law office are not known, and it is not possible to infer the amount of access the defendants typically had to Muwonge's office. It is also unclear from the pleadings when it was that the defendants entered Muwonge's office to remove his personal belongings or to open his mail, and whether this occurred after his termination. As such, it is not possible to determine whether Muwonge's office was so open to the defendants that he could not have had a reasonable expectation of privacy therein.

That having been said, the lack of specificity in the complaint does not mean that the complaint fails to state a claim. The complaint alleges that the defendants intentionally disregarded Muwonge's right to privacy by entering his personal office, opening his personal mail, and removing his personal items. Moreover, Muwonge alleges that he was a partner of the law firm. As such, it is possible that he would have a greater expectation of privacy in his office than a different type of "employee" might have. These allegations are sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. Thus, the defendants' motion to dismiss the plaintiff's claim for invasion of privacy will be denied.

**F. Retaliation (Count Six)**

The defendants argue that the plaintiff has failed to exhaust his administrative remedies with respect to the claim for retaliation, and therefore is precluded from bringing a claim for retaliation. Under Title I of the ADA, a party must file a charge of employment discrimination with the EEOC prior to filing a complaint alleging a violation of the ADA. *See* 42 U.S.C. § 12117 (incorporating "[t]he powers, remedies, and procedures set forth in [42 U.S.C.] sections . . . 2000e-5;" 2000e-5 contains the administrative exhaustion provision).

20

In general, a plaintiff cannot bring claims in a lawsuit that were not included in the EEOC charge, unless these additional claims are reasonably related to, or may be inferred from, the allegations in the EEOC charge. *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). To determine whether a claim is reasonably related to the EEOC charge, the essential question is "'what EEOC investigation could reasonably be expected to grow from the original complaint.'" *Novitsky v. American Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999) (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 n.2 (7th Cir. 1985). The purpose of this rule is to provide "the employer some warning of the conduct about which the employee is aggrieved, and [to provide] the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

The defendants argue that a claim for retaliation is not reasonably related to an EEOC charge of disability discrimination. *See O'Rourke v. Continental Casualty Co.*, 983 F.2d 94, 97 (7th Cir. 1993) (finding that retaliation was not reasonably related to allegations of age discrimination). Although this may be correct in certain instances, it does not warrant dismissal of the plaintiff's retaliation claim in this case. This is because the plaintiff is not claiming that the defendants engaged in retaliatory conduct prior to the filing of the EEOC charge. Rather, the plaintiff is claiming that retaliatory conduct was taken as a result of his filing this particular lawsuit.[7]

As noted above, one of the purposes of the exhaustion rule is to provide the EEOC and the employer an opportunity to settle the grievance without resort to the courts. However, this case was

---

[7]Specifically, the plaintiff alleges in the amended complaint that "the defendants each and via their agents, servants and employees, set out to engage in prohibited retaliatory conduct against Muwonge following their discovery that Muwonge had instituted the instant action against said defendants." (Am. Compl. ¶ 40.)

already pending in federal court when the plaintiff amended his complaint to include a claim for retaliation. Given that the claim for retaliation relates to the filing of this suit, it was not possible for such claim to have been included in the original EEOC charge. The ADA requires administrative exhaustion of claims that could have been filed with the original EEOC charge. It does not require exhaustion of a claim for retaliation for filing this suit, which filing occurred subsequent to the filing of the EEOC charge for disability discrimination. *See Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989) ("We join the other circuits . . . in adopting the rule that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first [EEOC] charge."); *McKenzie v. Illinois DOT*, 92 F.3d 473, 482 (7th Cir. 1996) (in cases where the alleged retaliation arose after the filing of the EEOC charge of discrimination, only a single filing was necessary because "a double filing 'would serve no purpose except to create additional procedural technicalities.'") (quoting *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 535 (7th Cir. 1988)).[8] Thus, the defendants' motion to dismiss the retaliation claim will be denied.

### III. CONCLUSION

In conclusion, and for all of the foregoing reasons, the defendants' motion to dismiss will be granted in part and denied in part. Mrs. Muwonge will be dismissed as a party. The defendants' motion to dismiss Eisenberg as a party will be denied. The defendants' motion to dismiss Muwonge's claims for intentional infliction of emotional distress (Count Three), breach of contract (Count Four), violation of the right to privacy (Count Five), and retaliation (Count Six) will be

---

[8]Although Muwonge is not alleging retaliation for filing his EEOC charge, the same reasoning applies to his allegation of retaliation for filing this suit. In both situations, the alleged retaliation would have arisen after the filing of the EEOC charge. Moreover, the filing of this suit directly stems from Muwonge's filing of his EEOC charge. As such, requiring a double filing in this situation would also "serve no purpose except to create additional procedural technicalities."

denied. Count Four of the complaint, insofar as it purports to set forth claims of fraud and fraudulent inducement, will be dismissed.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion to dismiss be and hereby is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that on April 3, 2008, at 9:00 a.m. a further scheduling conference will be conducted in Room 253 of the United States Court House, 517 E. Wisconsin Ave., Milwaukee, Wisconsin, to discuss with the parties the steps necessary to further process this case. Parties located over 50 miles from the courthouse may participate by telephone upon request.

**SO ORDERED** this <u>19th</u> day of March 2008, at Milwaukee, Wisconsin.


<u>/s/ William E. Callahan, Jr.</u>
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

23